**UNITED STATES of America**

v.

**FISHING VESSEL MARY ANN, her engines, machinery, masts, anchors, etc., in rem,**

**and**

**Ahto Walter et al., in personam.**

**Civ. A. No. 69–H–31.**

United States District Court,
S. D. Texas,
Houston Division.

Dec. 10, 1970.

As Amended Jan. 30, 1971.

Jack Shepherd, Asst. U. S. Atty., Houston, Tex., for plaintiff.

L. Glen Kratochvil, Houston, Tex., for defendants.

## MEMORANDUM AND ORDER

SEALS, District Judge.

The plaintiff, United States of America, brought this action to recover on a promissory note, signed by Ahto Walter and his wife, Lucy A. Walter, and on a guarantee agreement, executed by Ewen Duff Walter, and to foreclose on a First Preferred Ship Mortgage on the note's collateral, the fishing vessel MARY ANN. Lucy A. Walter and Ewen Duff Walter have filed a motion to dismiss this case as against them for lack of jurisdiction. Ahto Walter has filed a counterclaim against the United States of America, alleging that his inability to meet his mortgage obligations was caused by the breach by the United States of America of its contractual obligations. Upon stipulated and undisputed facts, the United States of America and Ahto Walter have filed cross-motions for summary judgment, pursuant to Rule 56, F.R.Civ.P.

This court has full and complete jurisdiction over the subject matter involved herein and the parties hereto, except the defendant Lucy A. Walter, as she was never served with summons or citation herein. Accordingly, defendant Lucy A. Walter should be dismissed from this case, but the motion to dismiss for lack of jurisdiction should be denied in all other respects.

The note, mortgage and guarantee agreement referred to in the introductory paragraph of this Memorandum and Order were made and executed on December 15, 1966, in return for a loan by the United States of America in the amount of $397,506.00, which was to be used in the purchase of the MARY ANN.

Article I, section 2 of the mortgage provides that the "Mortgagor will, at all times and at its own expense, keep the Vessel insured" with coverage "fully and adequately protecting the Vessel and the Mortgagee's interest therein." Insurance was to be taken out in name of the Mortgagor and Mortgagee "as their interest may appear" and all losses were to be "payable to the Mortgagee." In December of 1966, in compliance with these terms of the mortgage, Ahto Walter obtained a builder's risk policy, No. HEE–1248, which was issued by certain Pennsylvania and English underwriters. This policy designates Ahto Walter as the named insured and designates the United States of America as the sole loss payee. The mortgagee clause of the policy contains a standard or union mortgage clause endorsement, which provides that the interest of the United States of America shall not be impaired or invalidated by any act or neglect of Ahto Walter, the named assured, or the failure on his part to comply with any warranty or condition over which the United States of America has control but has not exercised such control.

On April 5, 1967, the MARY ANN capsized in Bayou La Fourche near Thibodeaux, Louisiana. Ahto Walter, at his own expense in the amount of $77,065.95, salvaged and restored the MARY ANN to her former condition.

Ahto Walter made a claim under the builder's risk policy to obtain proceeds

to reimburse him for his expenditures. The United States of America also asserted a claim under this policy. Both claims were denied by the underwriters.

In November of 1967, Ahto Walter requested the Government, as the sole loss payee, to commence suit under the policy. He offered to join in the suit as co-plaintiff.

On December 19, 1967, before an answer was received from the Government, Ahto Walter brought suit in Louisiana for the same loss, under another builder's risk policy, number HE3–2517, which was issued by New Jersey underwriters (Walter v. Marine Office of America, et al, E.D.La., Civil Action No. 67–1849–D).

By letter dated January 26, 1968, the United States responded to Mr. Walter's earlier request concerning suit against the Pennsylvania and English underwriters under policy HEE–1248. The Department of Justice declined to bring suit but authorized Ahto Walter to sue "in the name of the United States of America" under the basic provisions of the policy. Suit was not authorized, however, against the Pennsylvania and English underwriters under the union mortgage clause endorsement.

On October 22, 1968, after settlement negotiations proved to be unsuccessful and after the United States of America, mortgagee, declined to file a lawsuit against The Insurance Company of the State of Pennsylvania, Ahto Walter, as the named assured in policy HEE–1248 issued by The Insurance Company of the State of Pennsylvania, filed a motion for leave to file an Amended Complaint to include this insurance company in that suit. Pursuant to leave of court, granted on November 22, 1968, Ahto Walter did file an amended complaint in the Louisiana litigation against the Pennsylvania underwriters. He alleged a cause of action only on his behalf and did not exercise the authority previously granted to him to allege a cause of action in the name of the United States of America.

On January 8, 1969 the United States of America withdrew Ahto Walter's unexercised authority to bring suit in its name under the basic provisions of policy No. HEE–1248. Thereafter, on July 23, 1969 the United States of America intervened, as mortgagee, in the Louisiana Litigation to assert a cause of action under policy HEE–1248.

On June 15, 1967 the first payment of principal in the sum of $10,193.00 plus interest on the note was due. Thereafter the note payments were due quarterly. Prior to November 1, 1968 Ahto Walter and his wife, Lucy A. Walter, failed to make payments on the note. In fact, on November 1, 1968 all of the principal amount of the note ($397,506.00) remained unpaid. Thus, the United States of America declared the note and the mortgage to be in default on November 1, 1968. The present suit on the note, guaranty and mortgage was commenced on January 13, 1969.

In the fourth defense and Ahto Walter's counterclaim, it is asserted that Ahto Walter's inability to continue to meet his obligations under the note and mortgage agreement were caused by the refusal of the United States of America to proceed promptly against the underwriters in policy No. HEE–1248 to recover proceeds payable thereunder and to apply such proceeds to reduce the mortgaged indebtedness or to pay these funds directly to Mr. Walter as reimbursement for the expenditures incurred by him in the salvage, repair and restoration of the MARY ANN. He alleges that at a time when he was unable to carry the additional financial burden of salvage, restoration and repair expenses and at the same time meet his obligations under the mortgage, the United States of America deliberately refused to file a lawsuit against the insurance companies for proceeds available as collateral security. Mr. Walter asserts that this refusal was wrongful and constituted a breach of the mortgage contract.

■ The rights of the defendants against the Pennsylvania and English underwriters under the basic terms of the policy No. HEE–1248 were not impaired by the refusal of the United States of America to file suit against the in-

surers in that policy. Ahto Walter, and not the United States of America, paid for the repairs. The United States' security interest, the MARY ANN, had been fully restored, and Mr. Walter had not yet been declared to be in default with respect to the note and the mortgage. Under these circumstances, the court feels that the United States of America did cooperate fully with Mr. Walter in his efforts to collect the insurance. As mentioned earlier in its letter of January 26, 1968, the United States of America authorized Mr. Walter to sue in the name of the United States of America under the basic provisions of the policy, under the following conditions:

> that he agrees to absorb all of the court costs and expenses of the litigation. In addition, we would require Mr. Walter to agree that no proceeds for any recovery will be paid over to him until the Department of Justice has been satisfied that (1) either the repair liens have been previously discharged or the proceeds will be used to accomplish such discharges, and (2) either payments under the preferred ship's mortgage are not in default or the proceeds will be used to cure such default. Mr. Walter is also requested to acknowledge that nothing in such an agreement would impair any rights of the United States, under the preferred ship's mortgage. Finally, prior to filing any pleadings, documents, memoranda of law or briefs with the court on behalf of the Government, they would first have to be approved by this office and signed by the United States Attorney for the district where suit is brought.

The court does not consider these conditions too onerous or unreasonable, and, as noted earlier, Ahto Walter never exercised this authority. The United States of America was not required to do more.

 The court also has concluded that the defendants in the original action do not have, and never have had, any rights under the Union Mortgage Clause endorsement to policy No. HEE–1248.

Some authorities regard such an endorsement as constituting a "separate contract of insurance with the mortgagee" (Home Ins. Co. v. Currie, 54 F.2d 203, 204 (5th Cir. 1931); see 11 Couch on Insurance 2d, § 42:694 (Anderson ed. 1963); 5A Appleman, Insurance Law and Practice § 3401 (1970)). Other authorities regard the endorsement as creating only an "independent cause of action for a mortgagee third party beneficiary of the insurance policy" (Walker v. Queen Ins. Co., 134 S.C. 144, at p. 163, 134 S.E. 263 at pp. 269–270. Regardless of how it is characterized, the endorsement is designed "purely to protect the mortgagee's interest" against wrongdoing on the part of the mortgagor (5A Appleman, Insurance Law and Practice § 3405 (1970)). The mortgagor acquires no rights under the union mortgage clause as a third party beneficiary (see, 18 Couch on Insurance 2d, § 74:344 (Anderson ed. 1968); Walker v. Queen Ins. Co., *supra*; McKay v. National Union Fire Ins. Co., 182 Minn. 378, 234 N.W. 589 (1931); Lett v. Guardian Fire Ins. Co., 125 N.Y. 82, 25 N.E. 1088 (1890); Annotation, Rights as between mortgagor and insurance company where policy avoided as to mortgagor but not to mortgagee, 52 A.L.R. 278 (1928)). Although the rights of the United States of America in the standard mortgage clause endorsement may have been assignable to the defendants, no such assignment was made. Furthermore, the doctrine of legal subrogation is simply not applicable since it covers only those instances where one party pays a debt for which another is primarily answerable, and in the circumstances in this case Ahto Walter, and not the United States of America, was primarily responsible, under the terms of the mortgage agreement, to pay for the necessary repairs. Only if the United States of America had been primarily responsible for making the repairs would Ahto Walter's paying for same entitle him to subrogation to the United States of America with respect to any proceeds payable under the union or standard endorsement. Since the defendants had no

rights under the union or standard mortgage clause endorsement, the United States of America, by declining to sue or authorize suit in January of 1968 against the Pennsylvania and English underwriters under the standard or union mortgage clause endorsement to policy No. HEE–1248, caused no cause of action to arise in favor of the defendants.

By reason of the foregoing, the fourth defense to the suit of the United States of America and Ahto Walter's counterclaim must fail, and, upon the stipulated facts, the United States of America is entitled to judgment on its action. The sole remaining matter, then, is the determination of appropriate damages.

The record reflects the following:

1. On November 1, 1968, all of the principal amount of the Note, namely $397,506.00, remained unpaid.

2. By November 1, 1968, the United States of America had expended, pursuant to the terms and conditions of the Note and Mortgage, an additional $15,213.38 for preservation and protection of the MARY ANN and had not been reimbursed for that sum.

3. On November 1, 1968, accrued simple interest at 6% on the sums indicated in paragraphs 1 and 2 above amounted to $18,169.99.

4. Between September 27, 1968, and April 9, 1969, the United States expended, pursuant to the terms and conditions of the Note and Mortgage, an additional $9,854.08 for preservation and protection of the MARY ANN and has not been reimbursed for that sum.

5. Between September 27, 1968, and April 9, 1969, Ahto Walter became entitled to a total credit of $11,271.05 resulting from a refund of some moneys expended by the United States of America for preservation and protection of the MARY ANN.

6. On April 9, 1969, accrued simple interest at, 6% on the sums indicated in paragraphs 1, 2, 3 and 4 above, after the sum indicated in paragraph 5 above had been taken into account, amounted to $11,364.43.

7. The vessel, MARY ANN, was sold at an interlocutory public auction on April 9, 1969 for $250,000.00.

8. The Marshal's expenses from the sale of the MARY ANN amounted to $3,862.21.

9. On November 5, 1969, this court entered an interlocutory order, without prejudice to the defendants' defenses and counterclaim, applying the net proceeds from the sale of the MARY ANN against the outstanding indebtedness of Ahto Walter. The judgment recited that "the United States of America recover from Ahto Walter the sum of $440,836.83 with interest at 6% per annum on $429,472.40 from April 9, 1969, until paid." Between April 9 and the date the interlocutory decree was entered, November 5, interest at 6% per annum ($70.61 per diem) on $429,472.40 amounted to $14,828.10, which when added to $440,836.83 produced a total indebtedness of $455,664.93. The gross proceeds from the sale of the MARY ANN amounted to $250,000.00. Deducting the Marshal's costs of the sale, $3,862.21, leaves net proceeds of $246,137.79. Applying the net proceeds to the total indebtedness as of November 5 produces a deficiency of $209,527.14.

Accordingly, the United States of America is entitled to judgment in its favor against defendants in the amount of $209,527.14, with interest at the rate of 6% from November 5, 1969.

Counsel for the plaintiff is directed to submit an appropriate judgment.

### ORDER

Having considered the motion of the plaintiff United States of America to reconsider and amend its Memorandum and Order of December 10, 1970 and the motion of defendants to set aside said Memorandum and Order, it is hereby ordered as follows:

(1) The first full paragraph on page two of the court's Memorandum and Or-

der of December 10, 1970 is amended to read as follows:

This court has full and complete jurisdiction over the subject matter involved herein and the parties hereto, and the motion to dismiss for lack of jurisdiction should be denied in all respects.

(2) The last paragraph on page thirteen of the Memorandum and Order is amended to read as follows:

Accordingly, the United States of America is entitled to judgment in its favor against defendants in the amount of $209,527.14 with interest at the rate of 6 percent from November 5, 1969, plus costs of court herein.

(3) The plaintiff's motion to reconsider and amend the Memorandum and Order is denied in all respects other than as granted in order (1) above.

(4) The defendants' motion to set aside Memorandum and Order is denied in all respects.